# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**MICHAEL ANTONIO WILLIAMS,**

    **Plaintiff,**

 **v.**              **CASE NO:**

**LAKELAND MOTORS, LLC d/b/a**

**LAKELAND CHRYSLER DODGE JEEP RAM,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MICHAEL ANTONIO WILLIAMS, (hereinafter "Plaintiff" or "Mr. Williams"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, LAKELAND MOTORS, LLC d/b/a LAKELAND CHRYSLER DODGE JEEP RAM (hereinafter "Defendant," or "Lakeland Motors") and alleges:

## INTRODUCTION

1.    The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on race and retaliation in violation of his rights under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations.

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his race, and retaliated against him for opposing discriminatory practices in violation of his rights under Title VII.

3.     As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer the loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

6.     This Court has jurisdiction to grant declaratory relief, declare the

rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.    Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Polk County, Florida.

## PARTIES

8.    Plaintiff is a 42-year-old African American male.

9.    Plaintiff is a member of a class protected against discrimination and retaliation based on his race under Title VII.

10.    During the period from October 12, 2022, until March 31, 2024, Defendant employed Plaintiff as an Estimator in the Body Shop.

11.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII.

13.    The Defendant, LAKELAND MOTORS, LLC d/b/a LAKELAND CHRYSLER DODGE JEEP RAM, is a Limited Liability Company with a principal place of business located at 2875 Mall Hill Drive, Lakeland, Florida 33810.

14.    At all times material herein, Defendant regularly conducted, and continues to conduct, business as an automotive dealership that buys and sells vehicles and offers maintenance services throughout Polk County, Florida.

15.    At all times material herein, Defendant met, and continues to meet, the definition of "employer" under all applicable federal and state statutes including, but not limited to, Title VII.

16.    Accordingly, Defendant is liable under Title VII for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.    On May 15, 2025, Plaintiff timely dual filed a Charge of

Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race discrimination and retaliation.

19.    On June 30, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2024-02071) against Defendant.

20.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

21.    On October 12, 2022, Defendant hired Plaintiff as an Estimator in the Body Shop at its automotive dealership located at 2875 Mall Hill Drive, Lakeland, Florida 33810.

22.    As an Estimator, Plaintiff's job duties included taking intake pictures of vehicles, photographing mileage and VIN numbers, documenting existing damages, exporting pictures to CCC1 files, parking vehicles and managing keys, bringing vehicles for customer pickup, coordinating with body technicians for vehicle movement, taking additional damage photos, driving courtesy vehicles for customer transport, delivering

vehicles for service, and picking up and delivering parts.

23.    Throughout his employment, Plaintiff was supervised by Jay Burkett, a Caucasian male who served as Shop Supervisor, and worked alongside other estimators and body shop personnel.

24.    Among Plaintiff's co-workers was Richard LaChapelle, a Caucasian male who worked as a Back End Writer/Estimator. Mr. LaChapelle displayed a "White Privilege" decal on the tailgate of his personal truck, which he drove to work and parked on the Defendant's premises.

25.    From the very beginning of Plaintiff's employment, Mr. LaChapelle exhibited racially discriminatory behavior toward Plaintiff. Unlike his treatment of Caucasian employees, Mr. LaChapelle refused to train Plaintiff on back-end estimator duties, telling Plaintiff "he didn't have to, and he wasn't going to teach me shit."

26.    In stark contrast to his treatment of Plaintiff, Mr. LaChapelle willingly trained Alan, a Caucasian employee who was transferred from body technician to part-time estimator and needed training on estimator duties.

27.    On November 10, 2022, when Plaintiff texted Mr. LaChapelle

about a roof leak issue, Mr. LaChapelle responded dismissively with "So," demonstrating his lack of respect for Plaintiff.

28.    On November 30, 2022, while Plaintiff was still in his probationary period of employment, Mr. LaChapelle sent Plaintiff a text message containing a picture of a gray SUV with the message "Fag in Jag," which was both offensive and discriminatory.

29.    In June 2023, Mr. LaChapelle confronted Plaintiff near the bathroom area. During this confrontation, Mr. LaChapelle put his finger in Plaintiff's face, called Plaintiff "lazy," made derogatory comments about Plaintiff's stepson, calling him "sorry and no-good," threatened to "kick my ass," and told Plaintiff that he didn't have to respect him.

30.    On July 21, 2023, while Plaintiff was talking to Shane, a Caucasian trainee, Mr. LaChapelle aggressively approached Plaintiff and yelled "get the Fuck out of my Shop." When Plaintiff responded that Chris Doherty pays him, Mr. LaChapelle said "he pays me" and threatened to "kick my ass."

31.    On August 1, 2023, Mr. LaChapelle told a co-employee in Plaintiff's presence, "Move your car off the drive, you are not better than any one of us, you can walk in the rain."

32.    On August 10, 2023, Mr. LaChapelle aggressively opened a door that almost hit Plaintiff and did not apologize for his actions.

33.    On August 21, 2023, Mr. LaChapelle told a co-employee, "Close the F-king door before I whoop your a--" in Plaintiff's presence.

34.    On February 9, 2024, in front of Will Bodnar (Production Manager) and David (Assistant Manager), Mr. LaChapelle told Plaintiff, "I needed to move my fucking van from out the row and put it in a fucking space before he moves the mother fucking himself and I will not like it."

35.    Following this February 9, 2024 incident, Plaintiff immediately went to the Human Resources department and spoke directly with Eric Freeman, the HR Manager, about the ongoing harassment and discrimination he was experiencing from Mr. LaChapelle.

36.    Throughout the course of his employment, Plaintiff reported these incidents to David (Assistant Manager) and Will Bodnar (Production Manager), and spoke directly with his supervisor Jay Burkett about the issues on multiple occasions.

37.    Despite being informed of Mr. LaChapelle's conduct, David (Assistant Manager) failed to report the incidents to HR or properly document them as required by company policy.

38.    On February 21, 2024, Plaintiff submitted a formal written complaint to HR via email detailing the discriminatory treatment and hostile work environment he was experiencing.

39.    Upon information and belief, Plaintiff was not the only African American employee to experience discriminatory treatment from Mr. LaChapelle. Dallas Byrd, another African American employee working as a Shop Helper/Detailer, had filed similar complaints against Mr. LaChapelle in December 2023.

40.    Following Plaintiff's formal complaint, Eric Freeman conducted an investigation. However, the investigation was inadequate and biased, as HR failed to interview key witnesses including Dallas Byrd, Edwin (a Hispanic body technician), Melvin (an African American body technician trainee), Shane (the Caucasian trainee), and Julie Wood (a Caucasian estimator).

41.    Julie Wood, who witnessed Mr. LaChapelle's discriminatory treatment of Plaintiff, had expressed her belief that the treatment was based on Plaintiff's race. However, HR failed to interview her as part of their investigation.

42.    Despite the clear evidence of discriminatory conduct, HR's

investigation concluded that the incidents were merely "regular shop talk" and that both Plaintiff and Mr. LaChapelle were "equally at fault for creating a toxic work environment."

43.     On March 18, 2024, HR issued final written warnings to both Plaintiff and Mr. LaChapelle for allegedly creating a toxic work environment. Mr. LaChapelle was required to complete Anti-Harassment Training, while Plaintiff was instructed to report aggressive conflicts to the Body Shop Manager and refrain from hostile behaviors.

44.     Jay Burkett, Plaintiff's supervisor, also received a written warning for his failure to document employee relations issues properly.

45.     On March 25, 2024, just seven days after receiving the disciplinary action and approximately one month after filing his formal complaint, Jay Burkett called Plaintiff to his office at 10:37 AM and notified him that his job would end on March 29, 2024 (later extended to March 31, 2024) allegedly due to slow business and elimination of his position.

46.     Plaintiff was the only estimator whose position was allegedly eliminated, despite being hired before several other estimators who were retained, including Victor Morrell (hired September 2023), James (hired October 2023), and Nick (hired January 2024).

47.    When Defendant offered Plaintiff alternative employment, the positions offered were downgrades from his Estimator position, including a Lot Porter position at OK Cars and a Detail Position, both of which were inconsistent with Plaintiff's career goals and experience.

48.    The timing of Plaintiff's termination, occurring shortly after his formal complaint to HR about racial discrimination and harassment, demonstrates a clear pattern of retaliation for his protected activity of reporting discrimination.

49.    Throughout his employment, Plaintiff observed that Caucasian employees were treated more favorably than African American employees, receiving better training opportunities, more respectful treatment, and protection from disciplinary action when conflicts arose.

50.    Despite Mr. LaChapelle's pattern of discriminatory and harassing behavior toward Plaintiff and other African American employees, and despite receiving multiple complaints about his conduct, Defendant failed to take appropriate remedial action to stop the harassment and discrimination.

51.    Defendant's purported investigation was a sham designed to protect Mr. LaChapelle rather than address the legitimate complaints of

racial discrimination and harassment. The finding that Plaintiff was "equally at fault" for the toxic work environment ignored the clear evidence that Mr. LaChapelle was the aggressor who initiated and escalated confrontations based on Plaintiff's race.

52.    Defendant maintained an Equal Opportunity Employer policy in its Employee Handbook prohibiting discrimination based on race and other protected characteristics, yet failed to enforce this policy when confronted with clear evidence of racial discrimination and harassment.

53.    Mr. LaChapelle's conduct, including his display of "White Privilege" messaging on his vehicle, his refusal to train Plaintiff while training Caucasian employees, his use of offensive language and slurs, his physical intimidation, and his repeated threats of violence, created a hostile work environment that was both severe and pervasive.

54.    The discriminatory treatment Plaintiff endured was not isolated incidents but rather part of a continuing pattern of race-based harassment that Defendant knew about but failed to adequately address.

55.    As a direct and proximate result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered significant economic and non-economic damages, including loss of employment, loss of income,

loss of benefits, emotional distress, mental anguish, humiliation, and damage to his professional reputation.

**COUNT I**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Race Discrimination**

56.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57.     Plaintiff is a 42-year-old African American male.

58.     At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

59.     Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

60.     Plaintiff was subjected to discrimination by Richard LaChapelle

and other employees of Defendant who treated him differently because of his race, including but not limited to refusing to train him while training Caucasian employees, subjecting him to verbal harassment and threats, using offensive language and slurs, and creating a hostile work environment.

61.    Defendant's discriminatory treatment of Plaintiff included subjecting him to different terms and conditions of employment based on his race, including denial of training opportunities that were provided to similarly situated Caucasian employees.

62.    The discriminatory conduct was severe and pervasive, creating a hostile work environment that materially altered the terms and conditions of Plaintiff's employment.

63.    Defendant knew or should have known of the discrimination suffered by Plaintiff through multiple reports made to supervisors and management, including formal complaints to Human Resources.

64.    Despite having knowledge of the discriminatory conduct, Defendant failed to take prompt and effective remedial action to stop the harassment and discrimination.

65.    Defendant violated Title VII by subjecting Plaintiff to

discrimination because of his race by failing to promptly correct the discriminatory behavior of Mr. LaChapelle and other employees, and by ultimately terminating Plaintiff's employment in retaliation for his complaints.

66.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived him of statutory rights under Title VII.

67.    Defendant's actions constitute unlawful race discrimination in violation of Title VII.

68.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, MICHAEL ANTONIO WILLIAMS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, LAKELAND MOTORS, LLC d/b/a LAKELAND CHRYSLER DODGE JEEP RAM, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on his race;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to

Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Retaliation

69.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 55 of this Complaint as though fully set forth herein.

70.    Plaintiff is a 42-year-old African American male and a member of a protected class under Title VII.

71.    At all times material herein, Defendant employed Plaintiff and

Defendant was an "employer" within the meaning of Title VII.

72.    Plaintiff engaged in protected activity under Title VII by reporting race discrimination and harassment to his supervisors and management, including filing formal complaints with Human Resources about the discriminatory treatment he was experiencing.

73.    Specifically, Plaintiff reported incidents of race discrimination to David (Assistant Manager), Will Bodnar (Production Manager), and his supervisor Jay Burkett on multiple occasions throughout his employment.

74.    On February 9, 2024, Plaintiff physically went to the Human Resources department and spoke directly with Eric Freeman, the HR Manager, about the ongoing harassment and discrimination.

75.    On February 21, 2024, Plaintiff submitted a formal written complaint to HR via email detailing the discriminatory treatment and hostile work environment he was experiencing.

76.    Defendant was aware of Plaintiff's protected activity and his complaints of race discrimination.

77.    Following Plaintiff's protected activity, Defendant took adverse employment action against him by issuing him a disciplinary warning on March 18, 2024, and ultimately terminating his employment on March 31,

2024.

78.    The timing of Plaintiff's termination, occurring approximately one month after his formal complaint to HR and just seven days after receiving disciplinary action, establishes a clear causal connection between his protected activity and the adverse employment action.

79.    Defendant's stated reason for termination - alleged elimination of Plaintiff's position due to slow business - was pretextual, as evidenced by the fact that Plaintiff was the only estimator whose position was allegedly eliminated despite other estimators hired after him being retained.

80.    The adverse employment actions taken against Plaintiff would dissuade a reasonable employee from making or supporting a charge of discrimination.

81.    Defendant's retaliation against Plaintiff for engaging in protected activity violated Title VII.

82.    As a direct, proximate and foreseeable result of Defendant's retaliatory actions and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress,

humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, MICHAEL ANTONIO WILLIAMS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, LAKELAND MOTORS, LLC d/b/a LAKELAND CHRYSLER DODGE JEEP RAM, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff for engaging in protected activity;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.    Award compensatory damages to Plaintiff in an amount that

will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Date this 25th day of September 2025.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422

Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com